IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SUSAN LEAHY**, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. **3:08-CV-1732-L** |
| | § | |
| **ANDERSON CRENSHAW &** | § | |
| **ASSOCIATES, LLC,** and | § | |
| **THOMAS BACKAL**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Anderson, Crenshaw and Backal's Motion for Summary Judgment, filed November 6, 2009. After reviewing the motion, response, reply, briefs, appendices, record, and applicable law, the court **grants** Defendant Anderson, Crenshaw and Backal's Motion for Summary Judgment.

**I.     Factual and Procedural Background**

Plaintiff Susan Leahy ("Leahy" or "Plaintiff") originally filed this action in the 160th Judicial District Court, Dallas County, Texas, on August 21, 2008. Defendants Anderson Crenshaw & Associates, LLC ("Anderson Crenshaw") and Thomas Backal ("Backal") (collectively, "Defendants") removed the action to federal court on September 30, 2008, on the grounds that the lawsuit involved a federal question pursuant to 28 U.S.C. § 1331. Specifically, Plaintiff's claims arise under federal law, the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq.* ("FLSA").

Leahy was formerly employed by Anderson Crenshaw, a debt collection company, as a dispute coordinator. Confusion arose over her employee classification as a salaried or unsalaried

employee.[1]  This confusion prompted her to make an inquiry with Sheri McCann ("McCann"), one of Leahy's supervisors involved with payroll, and Fariba Angel ("Angel"), the human resources assistant, regarding her lack of overtime pay.  In April 2008, Leahy told Angel that she was going to contact the Department of Labor ("DOL") to determine whether Anderson Crenshaw's classification of her employment status was legal.  Leahy states that she contacted the DOL through her husband on approximately April 17, 2008, and subsequently received a complaint form to be completed and returned.  Afterward, Leahy told Angel that she intended to file a complaint with the DOL if the overtime payment problem arising from her employee classification was not corrected.  On approximately April 25, 2008, Leahy's employment was terminated.

Defendants allege that Leahy was terminated due to her lackluster quality of work and her violation of company policy, specifically her e-mailing of confidential company information to third parties and her excessive internet usage during work hours where she would make routine visits to Craigslist and Monster.com in search of new employment.  Although she does not deny the internet activity, Leahy contends that she never sent any e-mails containing confidential information to third parties and argues that Defendants have not produced any such e-mails.  Following her termination, Leahy completed her complaint with the DOL; the DOL concluded that Plaintiff was owed $1,097.93 in unpaid overtime compensation.  Defendants received the DOL's report and agreed to pay, and did pay, the owed amount.  The DOL then closed its case.

Leahy's complaint alleges two claims against Defendants.  First, she alleges that Defendants violated the FLSA through their failure to pay her overtime wages.  Second, she alleges that

---

[1] Plaintiff contends that if she worked more than forty hours per week, she did not receive overtime compensation; however, if she worked fewer than forty hours per week, she was compensated only for the hours actually worked.  Thus, she was classified as both "exempt" and "nonexempt," whichever category best served Anderson Crenshaw.

**Memorandum Opinion and Order – Page 2**

Defendants retaliated against her by terminating her employment after she complained of their alleged violation of the FLSA to the DOL. She seeks relief of monetary damages for lost back pay and front pay, compensatory damages, liquidated damages, and punitive damages for Defendants' retaliatory conduct, nominal damages for breach of contract, and attorney's fees and costs.

Defendants move for summary judgment on both of Plaintiff's claims. They argue that there is no evidence in the record to support her causes of action, that the reasons for her termination were legitimate and nondiscriminatory, and that all amounts owed to her for overtime pay have been duly paid.

## II.  Legal Standard – Motion for Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III.  Analysis

Plaintiff's complaint consists of two claims, one for violation of the FLSA for failure to pay her overtime wages, and one for retaliation under the FLSA because of her complaint to the DOL

concerning Anderson Crenshaw's failure to pay her overtime wages. The court will address each claim separately.

### A. Overtime Wages

Leahy argues that the DOL made a finding that she was owed $1,097.93 in unpaid overtime compensation and that she is entitled to such amount. Defendants have established that they received the DOL report and, after conducting their own review, determined that the report was correct. *See* Defs.' App. 40-42. Defendants accordingly acknowledged their mistake on June 26, 2008, and agreed to pay, and did pay, Leahy the $1,097.93 owed. *Id.* at 42. Leahy does not dispute that she received this monetary amount from Defendants. She filed her original complaint in state court on August 21, 2008, approximately two months after her overtime pay was delivered. Therefore, she was made whole and suffered no damages before filing this lawsuit. Moreover, she does not even address Defendants' contention that she has already received the lost wages in her briefing. The court therefore determines that Leahy has abandoned her claim. Accordingly, no genuine issue of material fact exists with respect to this claim. The record is clear that the error in overtime wages was identified and corrected; Leahy received her overtime compensation before her lawsuit was filed. Defendants are entitled to judgment as a matter of law with respect to Leahy's claim that they violated the FLSA for failure to pay her overtime wages.

### B. Retaliation

Leahy contends that Defendants retaliated against her by terminating her employment after they learned of her intention to file a complaint with the DOL. The FLSA prohibits retaliation against an employee who files a complaint, initiates proceedings, or assists in the initiation of proceedings under the FLSA. 29 U.S.C. § 215(a)(3). To prove her retaliation claim, Plaintiff must

prove the same elements that are required under Title VII's three-step *McDonnell Douglas* test. *James v. MedicalControl, Inc.*, 29 F. Supp. 2d 749, 752 (N.D. Tex. 1998) (Lindsay, J.) (citing *Hashop v. Rockwell Space Operations Co.*, 867 F. Supp. 1287, 1299 (S.D. Tex. 1994)). The *McDonnell Douglas* test is a three-part analysis designed to determine the employer's motive behind the challenged employment decision. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

First, Plaintiff must prove a *prima facie* case of retaliation. If Plaintiff successfully establishes her *prima facie* case, Defendants must rebut the presumption of retaliation by articulating a legitimate, nonretaliatory reason for their decision to terminate Plaintiff. If Defendants do so, Plaintiff must produce evidence that Defendants' proffered reason for the discharge is merely a pretext, and that the real reason for her termination is an illegal retaliatory animus. *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981). To establish a *prima facie* case of retaliation for the exercise of a federally protected right, Plaintiff must show that (1) she engaged in a protected activity; (2) she was subjected to an adverse employment action following her protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 554 (5th Cir.1997) (applying the standard in a Title VII case). The court will consider each of these elements in turn.

### 1.    Protected Activity

While Defendants argue that Leahy did not engage in a protected activity because she filed her complaint to the DOL only *after* she was terminated, Leahy contends that an informal, internal complaint can constitute a protected activity under section 215(a)(3) of the FLSA. The Fifth Circuit has adopted this position. *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 626 (5th Cir. 2008)

(holding that an informal, internal complaint constitutes protected activity under the FLSA because it better advances the goals of anti-retaliation).  The *Hagan* court, however, made clear that there are limits:  "not all abstract grumblings or vague expressions of discontent are actionable as complaints."  *Id.* (citation and quotations omitted).  The complaint must "concern some violation of law."  *Id.*

Leahy asserts that she engaged in protected activity when: (1) she questioned her supervisor, McCann, about her uncompensated overtime pay; and (2) she warned the human resources assistant, Angel, that she was going to contact the DOL to determine if such company practices of withholding overtime pay were legal.  With respect to Leahy's conversation with McCann, the court assumes without deciding that Leahy engaged in a protected activity under the FLSA.  In *Hagan*, the court determined that the plaintiff had not engaged in a protected activity because "he did not frame any of his objections in terms of [their] potential illegality . . . ."  *Id.*  Leahy's inquiry to McCann, by her own admission, did not frame the inquiry as a potential violation of the FLSA or any law.  Her affidavit, however, states that she concluded the inquiry with McCann by telling her that she "would look into this."  Pl.'s App. 159.  Arguably, a reasonable implication can be drawn here, one that establishes Leahy's concern and skepticism as to whether Anderson Crenshaw's overtime payment practices were legal.[2]

With respect to Leahy's conversation with Angel, the court also determines that an informal, internal complaint was properly voiced and qualifies as protected activity under the FLSA.  Leahy's affidavit and the deposition of Angel make clear that she expressed concern over not receiving

---

[2]There is no evidence that Leahy complained to McCann of company conduct that was explicitly "unlawful" or "illegal" but, given the context of her statement resolving to "look into this," the court presumes that her inquiry is sufficient to satisfy *Hagan*.

**Memorandum Opinion and Order – Page 7**

overtime pay and intended to contact the DOL to determine if Anderson Crenshaw was acting illegally. Furthermore, the evidence shows that Leahy specifically warned Angel that she would file a complaint with the DOL if her overtime compensation problem was not corrected. This falls within the *Hagan* court's contemplation and constitutes a protected activity under the FLSA.

Defendants argue that Leahy is bound by her pleadings, which allegedly lock her into the position that the only "protected activity" she claims was the actual filing of her complaint with the DOL. The court rejects this argument because, drawing a reasonable inference from the plain language of her complaint, it is clear that Leahy intended the description of her protected activities to include not just the filing of her complaint with the DOL but also her informal complaints to Anderson Crenshaw's human resources department and her supervisor. Accordingly, Leahy has articulated protected activities (her informal, internal complaints to McCann and Angel) that satisfy the first prong of the *prima facie* case of retaliation under the FLSA.

### 2. Adverse Employment Action

Leahy contends that the adverse employment action she suffered was her termination. There is no question that termination of employment constitutes "adverse employment action" under the FLSA. Accordingly, Leahy has articulated adverse employment action following her engagement in a protected activity that satisfies the second prong of the *prima facie* case of retaliation under the FLSA.

### 3. Causal Link

Leahy argues that she can demonstrate a causal link between her protected activity (complaining to McCann and Angel about overtime wages) and the adverse employment action (her termination). In support, she asserts the immediate temporal proximity of her conversation with

Angel in relation to her termination. Temporal proximity alone, however, is insufficient to raise a fact question. *See Roberson v. Allel Info. Servs.*, 373 F.3d 656 (5th Cir. 2004). Defendants contend that the temporal proximity here is nothing more than coincidence because the ultimate decision maker, Backal, the company president of Anderson Crenshaw, was never made aware that Leahy had voiced such concerns to Angel until after she was terminated. Defs.' App. 27-28. At deposition, Angel testified that she did not inform anyone of her conversation with Leahy. *Id.* at 18-19 ("I didn't go to anybody . . . [b]ecause the next day [Leahy] was already let go."). Leahy's own affidavit establishes that she did not talk to anyone else in human resources other than Angel about the potential illegality of Anderson Crenshaw's conduct. *See* Pl.'s App. 159-60.

Leahy nevertheless contends that "it is highly unlikely that Mr. Backal did not have knowledge of Plaintiff's complaints, prior to her termination." Pl.'s Resp. Br. 16. She further states "that these complaints were not conveyed to Mr. Backal or [human resources manager] Mr. Willoughby, prior to Plaintiff's termination, is doubtful." *Id.* at 16-17. These arguments are mere conjecture and are too slender of a read to raise any reasonable inference of retaliation for engaging in a protected activity under the FLSA. There is no evidence of the decision maker having knowledge of Leahy's complaints that contradicts Backal's deposition testimony; nor is there evidence of anyone in a position to influence the decision maker having conveyed such complaints to Backal before Leahy was terminated. As discussed, the evidence before the court establishes that Angel did not communicate her conversation with Leahy to Backal, McCann, or human resources manager Kevin Willoughby ("Willoughby"). Defs.' App. 20. Leahy's evidence does not contradict this, although she relies on deposition testimony from Willoughby, where he agreed that informing McCann or Angel of a payroll problem constitutes properly informing the company. *See* Pl.'s App.

16. While such complaints may have put the company on notice of Leahy's legal concerns, Willoughby's statement does not necessarily impute knowledge to Backal, the decision maker, especially in light of Backal's firm denial of having any such knowledge until *after* Leahy was terminated. Because the evidentiary record is deficient with respect to a fact issue concerning Backal's knowledge of Leahy's complaints, the court cannot find that Backal acted with retaliatory intent.

The court sees no causal link between Leahy's protected activity (her informal complaints to McCann and Angel) and the adverse employment action (her termination) if the person who made the decision to terminate her, Backal, never learned of her informal complaints until after the termination. The court therefore determines that Leahy has failed to establish, or raise a genuine issue of material fact, that the third prong for a *prima facie* case of retaliation under the FLSA has been met. While Leahy presents multiple arguments and submits evidence to rebut Defendants' alleged legitimate, nonretaliatory reason for her termination, the court need not address that phase of the *McDonnell Douglas* analysis because the required *prima facie* case has not been established. The law is clear that a legitimate, nonretaliatory reason for adverse employment action is required only after the *prima facie* case has been established. *MedicalControl*, 29 F. Supp. 2d at 752. Here, the *prima facie* case is deficient with respect to the third element of causal link.

No genuine issue of material fact exists with respect to the causal link requirement of the *prima facie* case for retaliation under the FLSA; Plaintiff has failed to meet her burden. Defendants are accordingly entitled to judgment as a matter of law with respect to Plaintiff's retaliation claim.

### C. Evidentiary Objections

Defendants object to multiple portions of Leahy's affidavit on hearsay grounds. After reviewing the objections and Leahy's response to the objections, the court determines that the statements in her affidavit either fall within a hearsay exception or are not hearsay. Defendants' objections to those portions of Leahy's affidavit are **overruled**.

### IV. Conclusion

For the reasons stated herein, the court determines that no genuine issue of material fact exists with respect to both of Plaintiff's claims. Her claim for overtime pay is without merit because Defendants have paid her the amount owed and she has failed to establish a *prima facie* case for her claim of retaliation under the FLSA. Defendants are therefore entitled to judgment as a matter of law, and the court accordingly **grants** Defendant Anderson, Crenshaw and Backal's Motion for Summary Judgment. Plaintiff's claims are hereby **dismissed with prejudice**. A final judgment will issue by separate document as required by Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 9th day of April, 2010.

Sam A. Lindsay
United States District Judge